NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MYRUS HACK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 05-2700 |
| v. | ) | |
| | ) | **OPINION** |
| MCDONALD'S CORPORATION | ) | |
| and A.J. GALLAGHER & CO., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

For Plaintiff: Brian J. Molloy (*Wilentz Goldman & Spitzer, PA*)
For Defendant McDonald's: Anthony P. La Rocco (*K&L Gates LLP*)
                         John J. Levy (*Montgomery, McCracken, Walker & Rhoads, LP*)
For Defendant Gallagher: Anthony P. La Rocco (*K&L Gates LLP*)
                         Mark D. Marino (*Kirkpatrick & Lockhart Preston Gates Ellis*)

**LINARES**, District Judge.

This matter comes before the Court on the joint Motion to Dismiss [CM/ECF #13] filed by Defendants McDonald's Corporation ("McDonald's") and A.J. Gallagher & Co. ("Gallagher") (collectively "Defendants") on October 22, 2008. This Court exercises jurisdiction pursuant to the diversity of the parties. 28 U.S.C. § 1332. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth herein, Defendants' motion is granted.

## INTRODUCTION

Plaintiff Myrus Hack, LLC ("Plaintiff" or "Myrus") leases a property in Hackensack, New Jersey, to McDonald's subsidiary Boston Market. As one of the terms of the lease, Myrus requires McDonald's to provide certain minimum general liability and casualty insurance. The

lease also required the tenant, Boston Market, to provide certificates of insurance from the insurer; Boston Market provided certificates of insurance, but said certificates were prepared by Gallagher, an insurance broker.  The Gallagher certificates disclosed either no deductibles or deductibles of $10,000 to $25,000.  Myrus alleges that McDonald's schemed with its insurance broker, Gallagher, whereby McDonald's convinced Myrus that it had obtained insurance with deductibles of up to $25,000, when in fact the deductibles were between $500,000 and $1,000,000.  Since the value of the Hackensack property is less than $1,000,000, Myrus claims that the high-deductible insurance McDonald's and Gallagher provided for Boston Market amounted to no insurance at all, as the actual deductible on the insurance policy exceeded the property value.  Myrus also claims that the certificates of insurance provided by Gallagher were fraudulent.

This is not, however, the first time that Myrus's claims with regard to the insurance provisions of the lease have been tested in court.  In 2000 and 2001, Myrus sought to invalidate the lease based upon deficiencies in the Gallagher certificates, and Boston Market initiated litigation in New Jersey Superior Court against Myrus ("Boston Market I") in order to enforce the lease, resulting in a trial in June 2002 in the Superior Court of New Jersey, Chancery Division.  The trial court held for Boston Market, finding that there had been no material breach of the lease on the issue of the insurance certificates.  The Boston Market I decision was affirmed on appeal.

Following Boston Market I, Myrus again sought to invalidate the lease, basing its theory of material breach in part upon Boston Market failing to perform its obligations to procure insurance under the lease.  Boston Market again sued to enforce the lease ("Boston Market II").

Myrus's counterclaims and arguments in Boston Market II were far more wide-ranging than in Boston Market I, and included an argument that the high-deductible insurance acquired by Boston Market was no insurance at all because the deductible exceeded the value of the Myrus property. Boston Market prevailed in Boston Market II, both at trial and on appeal.

The instant RICO, conspiracy, and fraud action was filed by Myrus during the pendency of Boston Market II. This suit was filed in New Jersey Superior Court, Middlesex County, claiming common law fraud, common law conspiracy, and violations of the New Jersey Racketeering Influenced Corrupt Organizations Act ("NJRICO"), N.J. Stat. Ann. §§ 2C:41-2(a), (c), and (d). Defendants removed, and this motion to dismiss followed. Myrus, in this action, alleges that it has been harmed because the value of its lease has been reduced because Boston Market did not provide adequate insurance for its property for several years. Additionally, Myrus claims that it is inadequately protected from hypothetical claims arising during the period of allegedly inadequate coverage.

## DISCUSSION

Defendants move this Court to dismiss the Complaint because it is barred under the doctrine of collateral estoppel and because Plaintiff has failed to plead damages. (Def. Br. at 2.) Plaintiff argues, on the other hand, that collateral estoppel cannot apply to its fraud claims and that it has, indeed, been damaged. (Pl. Opp. Br. at 19, 29.)

**A.    Legal Standard**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable

inferences in favor of the non-moving party.[1]  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp.

v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to

credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal

conclusions draped in the guise of factual allegations may not benefit from the presumption of

truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

     A sound complaint must set forth "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v.

Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Moreover, "factual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all of the allegations in the complaint are true."  Id.  Ultimately,

however, the question is not whether plaintiffs will prevail at trial, but whether they should be

given an opportunity to offer evidence in support of their claims.  Scheuer, 416 U.S. at 236.

With this framework in mind, the Court turns now to Defendants' motion.

## B.    Issue Preclusion (Collateral Estoppel)

     Under the Full Faith and Credit Act, 28 U.S.C. § 1738, this Court must "give the same

preclusive effect to a state-court judgment as another court of that State would give."  Exxon

---

[1] In doing so, a court may look only to the facts alleged in the complaint and any
accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild,
O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

-4-

Mobil Corp., 544 U.S. at 293;  Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d

Cir. 1997).  In a case related to state proceedings in New Jersey, such as this one, this Court

applies New Jersey's state law on issue preclusion (or collateral estoppel).  Issue preclusion in

New Jersey courts applies if:

> (1) the issue to be precluded is identical to the issue decided in the
> prior proceeding; (2) the issue was actually litigated in the prior
> proceeding; (3) the court in the prior proceeding issued a final

judgment on the merits; (4) the determination of the issue was essential to the prior judgment;
and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to
the earlier proceeding.

Township of Middletown v. Simon, 937 A.2d 949, 954, 956-57 (N.J. 2008).  "Even where these

requirements are met, the doctrine, which has its roots in equity, will not be applied when it is

unfair to do so."  Hennessey v. Winslow Twp., 847 A.2d 1, 7 (N.J. Super. Ct. App. Div. 2004).

Defendants argue that Myrus's claims rely upon either the fraudulent nature of the

certificates of insurance issued to Myrus, or that Boston Market did not provide adequate

insurance under the lease.  (Def. Br. at 19.)  Their argument goes on to note that as New Jersey

courts have found that the certificates were valid and the lease was not materially breached by

Boston Market, Myrus's claim cannot survive.  (Def. Br. at 19.)  Plaintiff counters by claiming

that it has recently uncovered new facts, not present during the state court litigation, that further

undermine the legitimacy of the certificates of insurance, and also that the elements of issue

preclusion cannot be met with regard to either state court action.  (Pl. Opp. Br. at 19.)

### 1.    Whether the Issues Are Identical and Actually Litigated

In Boston Market I, the trial court delivered its decision on June 11, 2002.  (La Rocco

Dec. Ex. B at 1.)  The Superior Court determined that the allegedly deficient certificates of

insurance supplied to Myrus from 2000 through 2001 were, at best, in technical contravention of the lease, and could not excuse Myrus from performing.  (Id. at 4.)  Notably, the Superior Court found that Boston Market had provided whatever proof of reasonable proof of insurance Myrus demanded, that there was no reason to doubt the creditworthiness of Boston Market, and that the insurance claims by Myrus were a device to attack the amount of the rent.  (Id. at 3.)  These determinations included Myrus's arguments concerning the facial deficiency of the 2000 and 2001 certificates of insurance.  (Id. at 2.)

On appeal, the Appellate Division affirmed the Superior Court.  (La Rocco Dec. Ex. D at 2.)  With respect to the insurance issue, the appellate court found that Boston Market had complied with the insurance provisions of the lease.  (Id. at 22.)  The Appellate Division also noted that Myrus failed to exercise its option to charge its tenant for obtaining additional insurance to cover any deficiency, and agreed with the trial judge's finding that Myrus's concerns about the insurance were not "bonafide."  (Id. at 22-23, 25-26.)

In Boston Market II, the trial court described the issues as identical to those in Boston Market I in its opinion of May 31, 2005.  (La Rocco Dec. Ex. C at 1.)  It was once again found significant that Myrus had not attempted to assert its contractual right to reimbursement for additional insurance to cover the alleged deficiency, and Myrus's goal in raising the insurance issue was again found to be wholly rent-related.  (Id. at 2.)  The trial court in Boston Market II then thoroughly analyzed the insurance structure used by Boston Market, and found that the $1,000,000 deductible arrangement, even though greater than the value of the Myrus location, provided adequate insurance.  (Id. at 4.)  The trial court rejected Myrus's claim that the insurance was nonexistent or inadequate based on this argument.  (Id.)  The court went on to discuss a

retroactive deductible reduction applied in March 2004, and noted that Myrus rejected it as inadequate at the time.  (Id. at 5.)  Furthermore, the court found, once again, that the insurance obligations in the lease had been complied with by Boston Market.  (Id. at 7-8.)

On appeal in Boston Market II, the Appellate Division once again affirmed the Superior Court.  (La Rocco Dec. Ex. E at 2.)  The Appellate Division noted that the lease did specify a deductible amount at all, and refused to disturb the trial court's reasoning that the $1,000,000 deductible did not violate the lease or, alternatively, not constitute insurance.  (Id. at 6, 8.)  Accordingly, the court found that "there was no material breach and no grounds for us to reverse the trial court's determination that [Boston Market] had insurance within the meaning of the lease."  (Id. at 11.)

It is apparent from the decisions in Boston Market II that the essence of Myrus's fraud claims were subsumed in the Boston Market I and Boston Market II litigation, which dealt with the same issues as those presented by Myrus's complaint.  The third paragraph of Myrus's Complaint, part of his summary of the case, sets forth in broad detail his allegations:

> What happened next is an extraordinary case of fraud and deception.  Rather than admit what is now an <u>undisputed</u> fact that it had <u>not</u> purchased the required insurance and that its landlord thus retained the risk of the entire loss, McDonald's and its insurance broker, Defendant A.J. Gallagher & Co. ("Gallagher"), concocted a scheme whereby Gallagher prepared bogus certificates of insurance that McDonald's presented to Myrus to lull it into believing that McDonald's insured its property.  In reality, McDonald's created the illusion of insurance by acquiring policies with deductibles <u>larger</u> than the value of the insured property, and the causing false certifications to be issued which misrepresented the amount of the deductible.

(Compl. ¶ 3 (emphasis in original).)  The Complaint goes on to flesh out these allegations, but

-7-

this Court notes that the fraud claims rely upon the absence of insurance and the falsity of the certificates of insurance with respect to the deductible.  Some of the specific issues raised by Myrus in the Complaint that were addressed in the state court actions are listed in the following table:

| Complaint | Previous Litigation |
|---|---|
| ¶ 36: Defendants failed to obtain sufficient insurance | Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Myrus was insured despite the high deductible (La Rocco Dec. Ex. C at 4) |
| ¶ 48: The high deductibles demonstrate that Myrus was not insured | Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Myrus was insured despite the high deductible (La Rocco Dec. Ex. C at 4) |
| ¶ 66: The value of the lease was decreased because McDonald's did not purchase sufficient insurance | Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Myrus was insured despite the high deductible (La Rocco Dec. Ex. C at 4) |
| NJRICO Predicate Acts<br><br>¶¶ 74, 75, 76: Failure to insure the property was fraudulent | <br><br>Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Myrus was insured despite the high deductible (La Rocco Dec. Ex. C at 4) |
| ¶¶ 84-85: Insurance was deficient | Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Myrus was insured despite the high deductible (La Rocco Dec. Ex. C at 4) |

| Complaint | Previous Litigation |
|---|---|
| **Fraud**<br><br>¶ 90: "Defendants intended to deceive Myrus into believing it was sufficiently insured." | Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Myrus was insured despite the high deductible (La Rocco Dec. Ex. C at 4); Appellate Division in Boston Market II affirmed finding of inadvertence or mistake as opposed to fraud (La Rocco Dec. Ex. E at 13.) |
| **Conspiracy**<br><br>¶ 98: "McDonald's and Gallagher conspired with its subsidiary to deceptively and fraudulently conceal from Myrus and the Court the fact that the subsidiary self-insured the risks that it was required to cover by insurance[.]" | Boston Market I found that insurance clause was satisfied (La Rocco Dec. Ex. B at 4); Boston Market II specifically found that Boston Market did not self-insure (La Rocco Dec. Ex. C at 4) |

Myrus argues that no court has dealt with the issue of whether or not McDonald's obtained the insurance it which it purported to possess.  (Pl. Opp. Br. at 19.)  This Court finds, to the contrary, that the issue of whether McDonald's procured insurance has been extensively litigated for the years 2000 through 2004 in Boston Market II.  Myrus also contends that Boston Market I never addressed the issue of whether insurance existed, or its claims that false evidence was presented to the state court in the form of the certificates, testimony, and the summary of insurance.  (Id. at 21.)  This Court finds, however, that the trial court in Boston Market I found that the attack on the insurance requirement was essentially an attack on the creditworthiness of Boston Market, and found that there was no basis to question the creditworthiness of Boston Market at that time to make good on its liabilities.  (La Rocco Dec. Ex. B at 3.)  Furthermore,

this Court finds that while the falsity of the certificates, summary, and testimony were not apparently before the state court in Boston Market I, those issues were raised in Boston Market II.  (Pl. Opp. Br. at 22 ("The Second Action addressed only the alleged fraud of [Boston Market]. . .").)   In fact, the decisions in Boston Market II find 1) that Boston Market had a "first dollar" insurance policy where the insurer paid claims subject to later reimbursement by Boston Market, backed up by a letter of credit found satisfactory by the state courts, 2) that the lease did not cover the issue of a deductible, and 3) that Myrus's theory that a high deductible resulted in no insurance was without merit.  (La Rocco Dec. Ex. C at 3-4, 6-8; Ex. E at 6, 10-11.)

Myrus claims that the issue of the fraudulent insurance documents and false submissions to the courts were never raised in the state court actions; this Court finds that such is not the case. (Pl. Opp. Br. at 23-24.)   The Appellate Division's opinion in Boston Market II affirmed a denial of leave to amend Myrus's counterclaim to add fraudulent concealment concerning:

> certificates that did not reflect the actual status of insurance coverage on the property and on the further ground, that plaintiff had presented testimony in court that its insurance coverage satisfied the terms of the lease when it knew that not to be the case.

(La Rocco Dec. Ex. E at 12-13.)   The Appellate Division found that Myrus had already pled fraud in its initial counterclaim, and that the fraud claim was dismissed by the trial judge because "any error by [Boston Market] in submitting certificates with incorrect deductibles was the result of mistake or inadvertence, and not the result of an intent to deceive."  (Id. at 13.)   While this finding does not agree with the position of Myrus as to whether Boston Market or Defendants practiced fraud with regard to the insurance certificates, the issue was certainly reached in the state court actions and actually litigated.

This Court also has before it at this time the brief of Myrus on summary judgment in Boston Market II.  (La Rocco Dec. Ex. F.)  Defendants argue that Myrus's brief presented much of the Complaint to the trial court in Boston Market II as arguments in support of summary judgment, and that the issues of whether or not the certificates of insurance were fraudulent or whether insurance existed were submitted to the Superior Court and actually litigated below. (Def. Reply Br. at 3-4.)  This Court finds that Myrus did, in fact, present its argument as to the fraudulent nature of the insurance and the insurance certificates, including what Myrus now refers to as the "First Confessional Email," on summary judgment in Boston Market II.  Compare La Rocco Dec. Ex. F at 3 (describing essence of scheme as Boston Market not purchasing insurance and preparing "bogus" certificates of insurance, alongside email) with Compl. ¶¶ 3-5 (same with respect to McDonald's and Gallagher).  The summary judgment brief goes on to allege fraud on the court in Boston Market I, and discusses the certificates of insurance from 2000 onward as one continuous course of conduct by Boston Market.  (La Rocco Dec. Ex. F at 3-4, 13-19.)  In fact, Myrus presented both of the "confessional" emails contained in its Complaint to the Superior Court in its allegations of fraud at summary judgment.  (Id. at 3, 5.)  This Court finds that, in addition to the issues raised and determined discussed supra, that the summary judgment brief presented essentially the entirety of the issues in the Complaint to the Boston Market II trial court.

This Court, therefore, agrees with Defendants that the issues of whether adequate insurance existed and whether the certificates of insurance were fraudulent were raised and actually litigated in the state court actions, satisfying the first two elements of issue preclusion.

   **2.**  **Final Judgment on the Merits**

Both Boston Market I and II resulted in trials in Superior Court, with verdicts in both cases against Plaintiff.  (La Rocco Dec. Ex. B; Ex. C.)  Both cases were appealed to the Appellate Division, each result being affirmed.  (Id. at Ex. D.; Ex. E.)  This resulted in two final judgments on the merits, both in favor of Boston Market.

### 3.      Whether the Issue Was Essential to the Judgment

In Boston Market I, although the trial court made findings with respect to the ultimate creditworthiness of Boston Market, the issue of whether or not there was sufficient insurance was not essential to the judgment: the court expressly found that Myrus sought only to enforce the technical requirements of the lease's insurance provisions, and did not seek information on actual insurance.  (La Rocco Dec. Ex. B. at 3-4.)  Whether Boston Market had actually acquired insurance, therefore, was not ultimately necessary to the judgment in Boston Market I.

The certificates of insurance were before the Boston Market I courts, but there is no indication that their "fraudulence" was presented as it was in Boston Market II; the Boston Market I trial court did not make a specific finding as to the truth or falsity of the certificates of insurance from 2000 and 2001.  (Id. at 2-3.)  This Court, therefore, finds that Boston Market I does not support a finding that Myrus's claims are collaterally estopped, because although the issues were presented and litigated, they were not necessarily essential to the judgment in that case, which rested on the narrower ground of whether the terms of the lease had been materially breached.  (Id. at 4.)

In Boston Market II, however, Myrus presented his arguments as to the falsity of the certificates of insurance and the inadequacy of the insurance procured by Boston Market to the trial court, as reflected in Myrus's summary judgment brief and in the Superior Court's written

decision.  (La Rocco Dec. Ex. C at 4, 5, 7; Ex. F at 3.)  These contentions were expressly rejected

at trial and those findings were affirmed on appeal.  (La Rocco Dec. Ex. C at 4, 5, 7; Ex. E at 8,

11, 12-13.)  Because a finding that insurance had not been purchased by Boston Market or that

the certificates of insurance were "bogus" would have resulted in a finding that Boston Market

was in breach of the lease in Boston Market II, these findings were essential to the Boston

Market II judgment.  (La Rocco Dec. Ex. E at 1-2.)  This Court finds, therefore, that the issues of

whether Boston Market was adequately insured and whether the certificates of insurance were

fraudulent were necessarily decided on the merits in Boston Market II against Myrus.

Myrus argues that there were no findings in Boston Market II regarding fraud that were

essential to the judgment.  (Pl. Opp. Br. at 23.)  A claim of common law fraud requires a New

Jersey plaintiff to prove "(1) a material misrepresentation of a presently existing or past fact; (2)

knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on

it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Gennari v.

Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).  The Supreme Court teaches that "mail

fraud requires two elements—(1) having devised or intending to devise a scheme to defraud (or

to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or

attempting to execute, the scheme (or specified fraudulent acts)."  Carter v. United States, 530

U.S. 255, 261 (2000).  As a civil RICO predicate act, mail fraud does not require a showing of

materiality.  Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2139 (2008).

Here, New Jersey courts found that the insurance was adequate under the terms of the

lease and that the insurance certificates, if inaccurate, were inaccurate only in error, thus

defeating either the first or the second element of the common law fraud claimed by Myrus in the

instant action.  (La Rocco Dec. Ex. C at 4, 5, 7; Ex. E at 8, 11, 12-13.)  Similarly, Myrus's RICO

claim requires a scheme of fraud or a series of fraudulent acts, which in the instant Complaint are

supplied by the insufficient insurance argument and the false certificates of insurance argument.

The findings in the Boston Market II opinions foreclose a determination of fraud as to those

facts.  (Id.)

4.      <strong>Privity of the Parties Claiming Preclusion</strong>

Myrus's primary contention with respect to whether the parties are in privity relates to

whether Boston Market committed fraud, as opposed to McDonald's and Gallagher.  (Pl. Opp.

Br. at 22-23.)  This Court agrees with Defendants that this argument goes to the issue of

mutuality of parties.  (Def. Reply Br. at 3.)

Issue preclusion under New Jersey law does not require identity of parties; it mandates

only that "the party against whom issue preclusion is asserted was a party to or in privity with a

party to the prior proceeding."  Hennessey, 847 A.2d at 7.  Myrus was the same party litigating in

Boston Market II, and no showing of whether it is in privity with itself is required.  To the extent

that the New Jersey issue preclusion test requires that McDonald's and Gallagher demonstrate

that they are in privity with Boston Market, however, they have succeeded.  Corporations in a

parent-subsidiary relationship, such as Boston Market and McDonald's, are closely related

enough that they satisfy privity.  See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 966 (3d Cir.

1991) (application of privity in claim preclusion).  Similarly, corporations engaged in the

contractual relationship about which litigation revolves, such as Gallagher's insurance broker

relationship with Boston Market and McDonald's, satisfy the privity requirement.  See Jefferson

Loan Co., Inc. v. Session, 938 A.2d 169, 179 (N.J. Super. Ct. App. Div. 2008) (finding that party

-14-

assuming contract comes into privity with other contractual party in Consumer Fraud Act

context). All parties to the present action, therefore, are at least in privity with the parties in

Boston Market II.

### 5.     Effect of Issue Preclusion on the Instant Action

Even if the elements of issue preclusion are met, a court should not apply the doctrine if

"it is unfair to do so." Fama v. Yi, 820 A.2d 65, 68-69 (N.J. Super. Ct. App. Div. 2003).

> In deciding whether to invoke the doctrine, a court should consider
> whether the party against whom it is asserted could not obtain
> review of the prior judgment, whether the quality or extent of the
> two proceedings was different, and whether it was not foreseeable
> at the time of the prior action that the issue would arise in
> subsequent litigation. Also, a court should consider whether new
> evidence has become available which could likely lead to a
> different result.

Fama, 820 A.2d at 69 (internal citation omitted). Here, Myrus did obtain appellate review of

both previous judgments; as demonstrated by the Boston Market II opinions and brief for

summary judgment by Myrus, the quality and extent of the litigation was similar; and this action

had already been filed (and stayed) prior to the final resolution of Boston Market II. Myrus's

sole argument based on the equitable application of issue preclusion, therefore, is its argument

that additional facts are available now that demonstrate fraud that were unavailable in Boston

Market II. (Pl. Opp. Br. at 23.)

Examining both the Complaint and Myrus's briefing on the instant motion, this Court

finds that the only new evidence Myrus presents to this Court is that the summary of insurance,

relied upon in both Boston Market I and II, did not indicate that there was no property insurance

under the stated Zurich policy number. (Pl. Br. at 16.) This Court finds that, given the findings

in Boston Market II that any errors in the insurance documents submitted were inadvertent, that this additional fact would not disturb the result achieved in state court.  (La Rocco Dec. Ex. E. at 13.)

Based upon the foregoing analysis, this Court finds that the Complaint is barred by issue preclusion.  The pillars of the fraudulent scheme pled by Myrus—that the insurance McDonald's procured was not insurance at all, and the McDonald's and Gallagher knowingly sought to deceive Myrus with the various insurance documents—have been exhaustively litigated in state court, and the state court determinations on these issues deserve preclusive effect.  Upon that basis, therefore, this Court dismisses Myrus's Complaint with prejudice.

## C.    Failure to Plead Harm

Defendants also move to dismiss based on Myrus's failure to plead damages under NJRICO or common law fraud.  (Def. Br. at 26, 32, 35.)  Myrus argues in response that it has been damaged through the expenditure of fees and costs in the state court litigation, and also that it lost the benefit of its bargain with respect to the lease's insurance requirements.  (Pl. Opp. Br. at 29-30.)

### 1.    NJRICO Damages

The Third Circuit has announced that a federal RICO claim requires a party to show standing through an injury that is "a concrete financial loss and not mere injury to a valuable intangible property interest."  Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000) (quoting Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994)).  This Court has applied the Maio injury standing requirement to claims under both federal RICO and NJRICO.  District 1199P Health and Welfare Plan v. Janssen, L.P., No. 06-3044, 2008 WL 5413105, at *5, n.7

(D.N.J. Dec. 23, 2008).

Defendants maintain that Myrus has failed to allege any concrete financial loss and also failed to plead RICO standing with particularity under Federal Rule 9(b).  (Def. Br. at 31-34.) The Plaintiff states that it has in fact been damaged, that its damages are recoverable under RICO, and that Defendants over-rely on Maio.  (Pl. Opp. Br. at 29-35.)

As an initial matter, this Court finds that RICO standing need not be pled under Federal Rule of Civil Procedure 9(b).  It is well-established in this Circuit that RICO itself need only be pled under Rule 8(a), and that Rule 9(b) applies only to RICO predicate acts that themselves require the higher pleading standard.  See Zax Environmental, Inc. v. Plant Constr. Co., LLC, No. 06-1020, 2008 WL 2509759, at *2 (W.D. Pa. June 18, 2008).

Turning to the issue of NJRICO injury standing, the parties essentially disagree as to whether Myrus's alleged injury is similar to the injury found wanting in Maio.  In that case, the Third Circuit Court of Appeals examined whether or not the appellant insurance policyholders had "standing under RICO because they paid too much in their premium dollars for the health insurance they received from Aetna."  Maio, 221 F.3d at 484.  The Third Circuit went on to describe in detail the appellants' theory of injury, predicated on the insurance itself and not any diminution in the value of care received by policyholders:

> Put differently, according to appellants' theory, the difference in value between the health insurance promised and the health insurance actually received, and consequently their RICO injury to property, is demonstrated by reference to the intrinsic value of health insurance with policies geared towards providing quality health care services, as compared to inferior health insurance with policies driven primarily by fiscal and administrative concerns. While not stated explicitly, the existence of appellants' financial loss under this theory necessarily is predicated on the assumption

> that Aetna's policies, in and of themselves, are of such a nature so
> as to have a direct negative impact on the economic value of
> appellants' health insurance, causing them to have overpaid for
> what they actually received.

Id. at 486.  The Third Circuit found this theory of damages inadequate.  First, it found that for a

plaintiff to have RICO standing for a diminution of contract value, a plaintiff would have to

show failure to perform under the contract—in other words, "medical injuries, a denial or delay

of medically necessary care, or the receipt of inferior or inadequate care." Id. at 490, 492.

Second, the court found that a diminution in contract value could not be shown "as matter of

simple logic" without proof of inferior treatment under the health insurance plan at issue.  Id. at

493.  This Court finds that Maio sets forth a rule under federal RICO that would apply equally

under NJRICO.  Interchange State Bank v. Veglia, 668 A.2d 465, 472 (N.J. Super. Ct. App. Div.

1995) (applying federal RICO law when persuasive under NJRICO).

> The damages pled in Myrus's Complaint are the following:

>> 66. For the many years in which the tenant, Boston Market,
>> did not purchase the requisite insurance to protect Myrus, the value
>> of Myrus, based in part upon the Lease, has been significantly
>> reduced.
>> 67. Not only has the value of Myrus decreased, Myrus is
>> not protected for claims that have arisen since the inception of the
>> Lease.  It will be years before Myrus receives notice of all potential
>> claims, as injuries to minors can be submitted years into the future
>> under the applicable statutes of limitation.

(Compl. ¶¶ 66, 67.)  In its opposition brief, Myrus also claims that it seeks all attorney's fees and

damages from Boston Market I and II, though it has not amended its complaint to do so.  (Pl.

Opp. Br. at 29.)  Myrus attempts to distinguish Maio by characterizing its damages argument as a

loss in the value of Myrus itself, not just a loss in the value of its lease due to a deficiency in

insurance.  (Id. at 32-34.)

The cases cited by Plaintiff, however, are inapposite.  Notably, all of the Third Circuit precedent located by Plaintiff predates Maio.  Myrus cites Town of Kearny v. Hudson Meadows Urban Renewal Corp., for the proposition that RICO harm could be found in the loss of value in a lease; Town of Kearny, a pre-Maio case, discusses RICO harm only to the extent of finding that RICO harm can flow from a predicate act rather than from the pattern of racketeering activity. 829 F.2d 1263, 1268 (3d Cir. 1987).  Malley-Duff & Assocs., Inc. v. Crown Life Insurance Co. found that a plaintiff demonstrated RICO damages in claiming harm to its cause of action due to obstruction of justice by the opposing party, as demonstrated by fees and costs; that case, however, was also a pre-Maio case, and contrary to the position Myrus finds itself in, involved a demonstration of facts supporting the obstruction claim.  792 F.2d 341, 353-55 (3d Cir. 1986). Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3d Cir. 1991), finds only that loss of market value in a home, not a contract, may serve as RICO damages.  Finally, Northeast Women's Center, Inc. v. McMonagle, 868 F.2d 1342, 1349 (3d Cir. 1989), stands for the proposition that damage to property absent further economic damages can suffice under the RICO harm requirement.

Myrus's Third Circuit precedent, taken as a constellation of potential RICO harm, does indicate that a loss of value in a business could, like the loss of market value in homes suffered in Genty, suffice to demonstrate RICO damages.  Myrus's case, however, is too close to Maio to benefit from such an argument.  The only loss to the value of Myrus's business this Court can ascertain is the loss attributable to Myrus's perceived diminution in the value of its insurance

-19-

rights in the lease.[2]  Myrus's claimed harm comes from its belief that the insurance is inadequate,

and that unliquidated liabilities may exist that could test the sufficiency of the insurance Boston

Market acquired.  (Compl. ¶¶ 66-67.)  Myrus has not shown, and does not claim in its Complaint

or its opposition brief, that it has endured any loss due to the "fraudulent" high-deductible

insurance carried by its tenant; nor, as a matter of simple logic, can this Court find that absent

any insurance claims in the offing, that the insurance provided was inferior or the deductible

claims in the certifications of insurance were damaging to Myrus.  This case is analogous to

Maio: Plaintiff seeks recovery for a decrease in the value of a contract that cannot be shown to

have decreased under the concrete and specific damages requirement.  221 F.3d at 490, 492-93.

This Court, therefore, finds that Plaintiff's NJRICO claims must be dismissed alternatively for

failure to plead damages.

### 2.      Common-Law Fraud Damages

As stated supra, a claim of common law fraud in New Jersey has the following elements:

"(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by

the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance

thereon by the other person; and (5) resulting damages."  Gennari, 691 A.2d at 367.  Defendants

aver that Plaintiff has failed to plead with the requisite particularity the final element of damages,

or that the damages are proximately related to Defendants' conduct.  (Def. Br. at 35-36.)  Myrus

argues that it has successfully pled damages, and rests on its arguments set forth with respect to

---

[2]This Court finds that the legal fees expended in Boston Market I and II could be a
measure of damages in a proper case.  Malley-Duff & Assocs., Inc., 792 F.2d 341.  However, in
the instant matter, this Court has already found that Boston Market II has a preclusive effect on
this litigation, and Myrus's claims of false testimony were submitted (and rejected) in that case.
(La Rocco Dec. Ex. E. at 13.)

NJRICO on the damages issue.  (Pl. Opp. Br. at 35-36.)

This Court found, supra, that damages had not been pled by Myrus as a matter of simple logic because he has not actually set forth the harm suffered other than the putative loss in the value of the lease.  Although this finding was under the logic of Maio, this Court finds that the same logic applies under a plain common-law fraud analysis.  The Appellate Division of New Jersey recently rejected a similar theory of fraud damages in Hoffman v. Asseenontv.Com, Inc. 962 A.2d 532, 540 (N.J. Super. Ct. App. Div. 2009).  In Hoffman, the plaintiff alleged that he was damaged by "an unconsummated purchase which defendant unilaterally canceled."  962 A.2d at 540.  The Appellate Division found that a plaintiff with such a fraud claim did not suffer any damage.  Id.  Myrus, with its claim of loss of value of the lease based upon a hypothetical contingency, has suffered loss not very different from that of the plaintiff in Hoffman at this time, and this Court finds that its common-law fraud claim must be dismissed on the alternative ground of failure to plead damages.

**E.      Common-Law Conspiracy as a Dependent Claim**

Defendants argue that common-law conspiracy in New Jersey requires an underlying tort to survive a motion to dismiss, and that as the remainder of Plaintiff's claims have been dismissed, the conspiracy claim must also be dismissed.  (Def. Br. at 37.)  Myrus, on the other hand, maintains that it has sufficiently pled the underlying conduct for its conspiracy claim to survive.  (Pl. Opp. Br. at 37.)

This Court has recognized that under New Jersey law, a civil conspiracy is not independently actionable.  Farris v. County of Camden, 61 F. Supp 2d 307, 349 (D.N.J. 1999). As this Court has already dismissed the remainder of Plaintiff's claims on the alternative ground

of failure to plead damages, the civil conspiracy claim is also subject to dismissal on the alternative ground that it is not independently actionable.  <u>Farris</u>, 61 F. Supp 2d at 349.

## CONCLUSION

For the reasons set forth above and pursuant to the Order accompanying this Opinion, this Court grants Defendant's motion to dismiss.


DATED: March 27, 2009                           <u>  /s/ Jose L. Linares       </u>
                                                United States District Judge